May it please the court. You cannot on the one hand conclude that a contractual provision is unambiguous and on the other hand interpret that provision two different ways. This is how the court stumbled. I'm going to say it again because this is key. You cannot on the one hand conclude that a contractual provision is unambiguous and on the other hand interpret that provision two ways. The relevant provision in the two contracts, and I realize the court probably can't see this but I put it on one page. You're going to have to take my word for it. It's exactly the same in the March 26th agreement and in the October 2nd agreement. It uses even the same font. The is where you can see where the district court went wrong. Literally in two sentences, members of the panel, that appear side-by-side in the district court's order. You can see where the court looks at this same language in these two contracts and reads it two different ways. Same thing, I've got these right here. I realize you probably can't see it. It appears in the bottom of page 11. As to the October 2nd agreement, when reading that language, it says that summary judgment is proper because termination of the agreement ended Universal Warranty's grant of authority to National Financial to solicit and service any contracts on Universal Warranty's behalf. Then below that, the court says that it was unambiguous that the contract provided this. Then right above where the court makes that determination, it looks at the same exact language in the March 26th contract and it says, because Universal Warranty has paid and may still be paying any commissions due National Financial, there can be no breach of any duty to pay such commissions. The court grants summary judgment on the March 26th contract. This was error. The court, on the one hand, declared the language in the October 2nd agreement unambiguous while, on the other hand, looking at that same language and interpreting it two different ways. On the March 26th contract, it says... Mr. Bartlett, let me interrupt you because I thought that the key here is the three little words, on behalf of. And on behalf of is in all of these, I think, two. And is that the sentence you're referring to? Yes. It's paragraph 7B. This is the... Yes. So we're talking about the same thing. Absolutely. Tell me why on behalf of, if we understand the three little words on behalf of, tell me why that doesn't basically resolve this case. Well, it's certainly very important. The words on behalf of are really important. And the question, what's undisputed, members of the panel, is that after these contracts were partially terminated, National Financial continued to service on behalf of the company and got paid. That's undisputed. But the district court held that that same on behalf of language, 7B, meant something different in the October 2nd contract than it did in the March 26th contract. And that cannot be. You can't have the same language surviving termination on the March 26th contract and not surviving termination on the October 2nd contract. It's mutually exclusive. It can't findings of fact. It said that this termination letter, purported termination letter, it's an April 15th, 2005 letter from Eric Dragoo. He's an executive at Ally. The district court made a finding of fact on page 6 and again on page 11 that the letter fully terminated these contracts. That's a finding of fact. The court can't do that. That's for the jury. The language of this very letter suggests otherwise. It envisions ongoing service by National Financial, which of course explains why they did continue to service long after the April 15th letter was sent. But there's another impermissible finding of fact. That the district court concluded that the servicing that was performed post termination only applied to the March 26th contract and not to the October 2nd contract. That's a finding of fact. The jury should have... I'm behind you a little bit. I'm slowly catching up as you can order. Page 11 versus another page of the order, right? No. It's both on page 11. Let's go to the bottom of page 11. Go to the bottom of page 11. That's exactly where I am. Tell me where the textual conflict is because I think that's what you're arguing. Absolutely. If you look at the... Do you see the heading that says 2003 universal rep agreement? Got it. That is relating to the October 2nd agreement. The court says there that termination of that agreement ended universal warranties grant of authority. Then right below that, on page 12 of his opinion, he says it's unambiguous. Then he applies the parole he dismissed or granted summary judgment on the March 26th agreement. Same exact language at issue here. What does he say? He says because universal has paid, he's dealing with this inconvenient fact. We got a really... I don't know how cases are. You've got stubborn facts. This is a stubborn fact. The court's trying to deal with that stubborn fact. He says, here, they have paid and may still be paying commissions due to national financial. There can be no breach of any duty. He's saying there was a duty to pay commissions, but that duty has been... No, I don't think that's necessarily so. Isn't he actually saying there's no dispute that they've been paid? At that point, there's no question about whether a duty was breached or not breached because they've been paid. It's not a justiciable question at that point. Isn't that really what the judge is saying there? But Judge Erickson, in order to get there, he has to conclude that there was a duty. Well, doesn't he have to conclude absolutely nothing because he could conclude that there was no duty, but payments were voluntarily being made. Or he could say there's no issue of fact. It doesn't really matter. It's not a question I've got to decide. I'm only deciding the questions that are actually disputed. But he did decide it. He said that this language is unambiguous. And then he went ahead and assigned a different meaning to the same language, Judge Erickson. And once you do that, you've got to have a jury because that's not within his province. Let me ask it a little different way. I noticed that the ultimately sentence, I now got it in front of me, is just talking about vehicle one sales. And the other one, is it talking about all kinds of sales? Can you distinguish the two sentences that way, counsel? These two agreements, the 2003, the October 2nd agreement is the agreement that's at issue. It's the one that we are alleging was breached. It applies to all of their vehicle service programs. And the V1 agreement is product specific to vehicle one. But the language in the two contracts are identical. The issue... Tell me, again, you can always tell I'm a notch behind you. Now, the March 03 is the vehicle one program, right? And the October 03 is all of them, right? Right. March 26. They're both in 2003. Yeah, yeah, yeah. But the March 03 is just vehicle one. It says at the top, right? That's correct. Correct. And this other one is, sounds bigger, representative agreement, right? It is. It's broad. It's not product specific. Okay. So can that justify the inconsistency if there is any between those two sentences? No, it cannot. The language that the court dealt with, that whole paragraph 7 and 7B, which is the whole focus, both for Ally for us and the district court, is exactly the same in the two contracts. The court has to... That's when he's deciding that there was no authorization. He's looking at 7B and saying, well, once it was And where he goes wrong there, two ways. Number one, the termination letter did not fully terminate these two contracts. Because you can look at the termination letter and see that it envisions ongoing service after termination. So the court made a finding of fact that was incorrect, that without even getting into parole evidence, he made a finding of fact that there was full termination rather than partial termination. But then after that, he interprets that same provision two different ways. Now... You are into your rebuttal, but you reserve generous rebuttal, so use it now if you wish. I'll shut it down right now and reserve... No, no, it's up to you, counsel. Yeah, I think I'll stop right now and then... Okay, great. Thank you. You may, of course. Mr. Davidson. Good morning, your honors. May it please the court. Steve Davidson on behalf of both Universal Warranty and Ally Insurance. Let me address that particular issue because I think the key here is exactly what your honor said. The phrase on behalf of is dispositive of this case. And even though Mr. Bartle has been busy trying to talk about inconsistency in the court's opinion, what's missing and what's never been presented either in the district court or in all the briefing here is what's the alternative meaning of that phrase that creates ambiguity. There is none. It can only mean one thing. And once that determination is that to currently service a dealer on behalf of the company requires a current active grant of authority to do so on behalf of the company, a grant of authority that cannot exist after the contract is terminated, that ends the case. Okay, well, counsel, do address, you know, we're so tell us why those aren't inconsistent and don't show there's ambiguity. They're completely consistent, and primarily it's because the judge in those paragraphs is talking about two separate contracts that address two separate items. Contract number one was only as to vehicle one as a product. And that contract is no longer at issue in this case. If you look at footnote three of the court's opinion, the plaintiffs abandoned any argument under that contract at the district court, made no argument about it on appeal, and the reason is because it does not get them to the end they seek, which is damages arising from the sale of a different product, Ally Premier. So whatever the outcome on contract number one involving V1, I think what that key language means in that contract for two reasons. Number one, it doesn't create a claim for damages as to the sale of Ally Premier, and number two, it only involves the sale of V1 products. Okay, so is the footnote inconsistent with the ultimately paragraph on page 11? If the judge really believed footnote three, footnote two, I'm sorry, on page nine, why did the judge put in the ultimately paragraph on page 11? Sure. I think it's alternative reasons to get to the same end. I mean, the judge said, I don't have to talk about that first contract at all because the claim has been abandoned, but I will. And when I look at it, I see it only talks about vehicle one, and there's no damages because the plaintiffs have been paid any commissions that might be due under vehicle one. He had many reasons to say that claim fails. That's not been appealed. What's been appealed is the claim for breach under contract number two between the parties. I can't resist asking this question because I don't think it was brief, but in Missouri, there's a volunteer doctrine, and a volunteer doctrine about payments sometimes you can use and sometimes you can't. Did you all brief anything about if you voluntarily make payments, what it means and what it doesn't mean in terms of a contract? Did not. That issue was not raised. Right. Okay. So proceed. You're the appellee. Go ahead. Proceed. Sure. And I would say, remember, the payments that have been made relating to vehicle one were a function of the letter that was signed back at the time that contract was created. The company honored its promise, paid those amounts. It's not what the case is about. This case is about whether the plaintiffs are entitled to commissions on Allied Premier under the October contract, contract number two. And that's where this critical language comes into play. That contract was terminated. There's no question about that. No question that the company had a right to terminate it for any reason on 60 days notice. Once it was terminated, the agent's authority to act on behalf of the principal ended. That's a function both of the contract itself, which expressly says so, and a function of very basic principles of agency law that if you're authorized to take action on behalf of a principal and a principal says that authority is now ended, the agent has a duty to cease acting on the principal's behalf. Now, Councilor, what is the impact on your position if the 2010 Universal Warranty Agreement did not supersede the 2003 agreement? The reason I ask that is that they don't even cover the same geographic footprint. That's correct. The geographic footprint is different. On the superseding question, I would say what you have to look at is what is the subject matter of the contract and whether that subject matter is the same in both instances. Here it is. The fact that the geography is changed goes to the same argument the plaintiffs are making, which is they contend that the payment obligations likewise changed between those two. The point is that when the same subject matter is covered by the two contracts, changes that have been made in them, you implement the later of the two. It's an alternative argument that we've offered. It's not necessary for you to address because if the on behalf of language is ambiguous, as the district court held, if that's correct, you don't even have to go there. If that's incorrect, then what happened was once we get to 2010, the party signed another contract governing the same subject matter, the scope of their relationship as principal and agent, and when that contract changed the geography that was authorized and changed the payment provisions, assuming it did, our contention would be that both say the same in different ways. But the second contract would supersede in control. Again, Judge Bisher decided he did not need to address that. I think for the same reason he decided he did not need to address the on behalf of language in the first contract because there was three other ways where the plaintiff's claim failed, and so he didn't need to get there or address that. It's interesting, your honors, that so much time is spent on the question of ambiguity here when much of the plaintiff's case and what I expect Mr. Bartle may talk about in his rebuttal are all the ways around that ambiguity. This record is 90% extrinsic evidence. It's not about the contract. This case has never been about the contract because I believe the plaintiffs understand that their best case was to try and find a way around it. What they missed was that Nebraska law may be even more strictly than some other states in our circuit has a very hard and fast rule about what happens when a contract is unambiguous, as this one is. Extrinsic evidence cannot be considered, whether it's course of performance, whether it's what former employees may have said about a different intention. None of that may be considered because the contract itself defines the relationship and did so clearly. But you agree, counsel, that there are many cases where the Nebraska Supreme Court says that and then kind of like the alternative sort of argument, they go ahead and then they talk about all the extrinsic evidence at length. You know, I think that's true, and I think Judge Beam used the right word when he talked about that in the NPPD case. He called it bolstering, and I think that's right. You know, the court says often Nebraska courts have looked at a contract, found the language unambiguous, but decided to go ahead and bolster the conclusion of their opinion by talking about course of performance or other extrinsic evidence. But what you will not find, no matter how hard you look, is a case from the Nebraska Supreme Court that says we think this contract is unambiguous, but we're going to reach a different result because of the extrinsic evidence in this record. That is what the Supreme Court has said is improper. It's a sequential process in Nebraska. Step number one is to ask about ambiguity, and ambiguity only matters if there are two have not been presented with an alternative reasonable interpretation of the sentence that matters here, because that sentence is clear and ties the agent's authority to act to the existence of an active contract, and the October 2003 contract, which is the tool the plaintiffs seek to use to gain these damages on the Allied Premier product, was terminated, and once it was terminated, any authority to act on behalf of the company under that contract ended. The other kind of global perspective I think I'd like to offer on these issues is to remember what kind of relationship, you know, from kind of a big picture, what kind of relationship these contracts created. You know, this is a limited grant of authority to someone to sell particular, to do particular things in particular places. It was not exclusive, meaning that both the company could appoint other representatives in those same territories or use its own employees to sell competitively. Likewise, that meant that the plaintiffs who represent multiple product lines could go into the same customers and sell different products if they chose. There's no sales minimums, no commitment to do business with each other unless it's a matter of competitive choice and competitive preference. As we've said, these contracts were terminable by either side on 60 days' notice, giving both sides flexibility to engage in these relationships as they wished. And importantly, after termination, the contracts are very clear that there was no restriction on either side to compete with each other for the business of the dealers. In the briefing, Mr. Bartle talked a lot about the relationship efforts that these salesmen make to develop strong relationships with these auto dealers. Having a contract of this nature is a huge advantage for those agents who have those in-person relationships because if they choose to end their relationship with Ally or if Ally chooses to end the relationship with them, they bring in Allstate, they bring in whomever and say, my friend dealer, here's another option for you. The flexibility that this kind of contractual relationship creates is a great advantage to the dealers who sign it. It also creates important flexibility to the company that administers these contracts. And really what the plaintiffs have tried to do in this case is implement a fundamental change to that kind of very limited business relationship on the basis of either extrinsic evidence or alleged misrepresentations that were made long after the fact that are flatly inconsistent with the relationship that was made on a contract that says if you want to change these terms, you have to do it in writing and both sides have to sign it. There's no question that nothing like that happened. No question that these gentlemen run sophisticated businesses. They're doing million-dollar deals. They know exactly what their contracts say. And to come now years later and say, let us out, implement some sort of binding long-term business relationship that is the antithesis of what the contract claims is really what ultimately brings you back to where we started, which is there's a very clear provision in these contracts that says after termination, you have no authority to act on behalf and without authority to act on behalf, we have no obligation to pay continuing representative fees to you. The district court got it right. It's an unambiguous contract. That ends the case. And we'd ask that you affirm. Thank you, counsel, for your argument. Mr. Bartle, rebuttal. Members of the panel, I really invite you to have a look at the purported termination letter. The district court had to look at it because it had to determine that the contract was terminated. But it doesn't terminate the it says it terminates the contract, but then the question is, what do you do with this authority to service? And it specifically says you shall be paid a representative fee for only those dealers you continue to provide service to on behalf. Mr. Bartle, is that easily can you tell me where it is in an addendum or appendix? Say it again. A149. 149. OK, go ahead. 149. And it's the it's the second paragraph. It took an impermissible finding of fact for the court to conclude that there was a withdrawal of authority. OK, tell me where in the letter now I've got it. Now we're down here on on the it's you see the bullets. I do. OK. And it's the sentence that says in accordance with the terms and conditions of the amendment, we're going to talk about the amendment and just that that use of that word amendment. Third sentence, our second sentence at the end, you shall be paid a representative fee for only those dealers you continue to provide to provide service to on behalf of Universal Warranty Corp. That is completely contrary to the court. First of all, the court. Is that again, though, just a vehicle one program? No. Are you sure? Yes, I'm very I'm very sure because there was no amendment. Members of the panel. Doesn't a plain language say and maybe I'm in the wrong place, but doesn't it say in the manner described in Section five of the Universal Corporation Vehicle One Program representative agreement as contemplated by the parties? OK, but but but the the key issue here, Judge, is it's it's the same. It's the same language in both. And the question is, did they continue to service and was that authorized service? This says that there was an amendment. There was no amendment. There's there's this. You've seen us talk about the Stewart letter. It's written about extensively, which shows another error by the court by the district court. Having deemed the contract unambiguous, the court's constrained, right? It can't look to other stuff. Well, it did. It looked to this Stewart letter and the Stewart letter. It's dated March 12th. It purports to. What is it in the record? Tell us. The Stewart letter is in the record is. A117. A117. OK. I got it. Talk about OK. Now look at the date on the dated March 26th. Then it doesn't even identify the proper contract. It says special representative agreement universal. There is no special representative agreement dated March 26th. It's trying. How can a letter of representative agreement doesn't have the word special, right? But here's another issue, Judge. That contract that's supposed to amend says that can only be amended in writing signed by both parties. This isn't signed by both parties. So here's the bigger point. The Stewart letter becomes really important to the district court to explain this inconvenient fact of ongoing service. And the court says, I'm not going to consider it an amendment. But he looks to it. And this is extrinsic evidence. It's not an amendment. So he violates the it says that's unambiguous. And once he does that, he can't. He looked at one letter and ignored 20 years of course of performance between these parties. Your time is expired. Thank you for your argument. Thank you both for the argument. Case 20 dash 1523 is submitted for decision by the court.